UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDELL T. WILLIAMS, SR. and
MINISTER MARCUS BODIE

    Plaintiffs,

v.

NORTHLAKE FOODS, INC.,
a foreign corporation, d/b/a
THE WAFFLE HOUSE

    Defendant.

_____/

Case No.: 8:01 CV 2101-T-27 TBM

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs Wendell T. Williams, Sr. and Minister Marcus Bodie sue Defendant Northlake Foods, Inc, d/b/a the Waffle House, a foreign corporation, demand trial by jury of all issues so triable, and allege:

### JURISDICTION AND VENUE

1.    This is a civil action for damages under 42 U.S.C. 1981 and 42 U.S.C. § 1982, and the State of Florida common law. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b) and (c) and Local Rule 1.02(c), because this is the judicial district in which a substantial part of the events giving rise to the claims stated herein occurred.



## PARTIES

3.      Plaintiff Wendell T. Williams, Sr. is a certified Funeral Director, licenced by the State of Florida (See Exhibit "1"), and is the proprietor of Williams Funeral Home, a family-owned business Mr. Williams founded in 1984 in Bartow, Polk County, Florida, with funeral parlors operating in Bartow and Sebring, Florida. Mr. Williams is a 41 year old married African-American, a resident of Bartow, Florida, and the father of four.

4.      Plaintiff Minister Marcus Bodie is an Assistant Minister of Beulah Missionary Baptist Church in Fort Meade, Polk County, Florida. (See Exhibit "2"). Minister Bodie, a resident of Miami, Dade County, Florida, is Mr. Williams' nephew, and a father.

5.      Defendant Northlake Foods, Inc., is a foreign corporation which operates businesses under the fictitious name "The Waffle House" in Lakeland, Polk County, Florida.

## FACTUAL ALLEGATIONS

6.      Defendant owns and operates The Waffle House restaurant located at 812 East Memorial Boulevard, Lakeland, Florida. The restaurant is open to the public and is a public accommodation, as that term is defined by 42 U.S.C. § 2000a(a) and (b)(2).

7.      Upon information and belief, Defendant owns and operates The Waffle House restaurant pursuant to a franchise agreement with Waffle House, Inc., a foreign corporation.

8.      On or about December 14, 2000, after a long day, Mr. Williams and Minister Bodie decided to eat breakfast at The Waffle House restaurant located at 812 East Memorial Boulevard in Lakeland, Florida. Each was dressed casually, wearing trousers and casual shirts.

2

At the time, Minister Bodie was recovering from spinal surgery due to herniated discs suffered several months prior in a motor vehicle accident.

9. After entering the restaurant, Mr. Williams and Minister Bodie sat at a window booth facing Memorial Boulevard. Each was courteous and cordial, acknowledging other patrons and restaurant employees upon entering.

10. A waitress greeted Mr. Williams and Minister Bodie, took their beverage orders, and served them soft drinks or coffee while they looked at the menus. The interaction was normal and cordial.

11. Soon thereafter, the waitress returned and took Mr. Williams' and Minister Bodie's breakfast order. This interaction was also normal and cordial.

12. One of Defendant's agents called 911 and reported that "two black men" -- referring to Mr. Williams and Minister Bodie -- were preparing to commit armed robbery of the Waffle House, that one or both were armed with a pistol, and that the "two black men" were sitting at a window booth facing Memorial Boulevard.

13. Mr. Williams and Minister Bodie, who were not armed with any weapons, were unaware that someone from the Waffle House had called 911.

14. Within minutes of the emergency call by the Waffle House agent, several police units of the Lakeland Police Department responded to Memorial Boulevard. As Mr. Williams and Minister Bodie were sitting in their booth drinking coffee and soda, they witnessed several Lakeland Police Department patrol cars with sirens blaring and lights flashing pull onto Memorial Boulevard in front of the Waffle House.

3

15. About twenty feet outside the Waffle House, several officers, with firearms drawn, seized a black man as he walked in front of the restaurant. The police officers were pointing their weapons at the black man's head, and from the angle and close proximity, Mr. Williams and Minister Bodie were in danger of being shot by stray bullets, in the event the law enforcement officers discharged their weapons.

16. Mr. Williams and Minister Bodie were shocked and terrified by the sudden appearance of the law enforcement officers, the drawing of weapons and the seizure of the black man almost immediately outside their seats inside the Waffle House. Neither Mr. Williams nor Minister Bodie had ever been present during such an incident and they were frightened that this incident was about to turn violent and fatal.

17. Almost immediately, several more officers entered the Waffle House, spoke a few words to the restaurant employees, and then approached Mr. Williams and Minister Bodie, with weapons drawn and pointed at their heads, ordering them to keep their hands on the table.

18. Neither Mr. Williams nor Minister Bodie understood why the Lakeland Police Department officers were approaching them. They were terrified. Because the officers had weapons drawn and prepared to fire, they complied with all orders.

19. One officer said to another "check him," and the officer ordered Minister Bodie to stand up and to "put up" his hands. After Minister Bodie complied, he was instructed to put his hands behind his head. Then, he was ordered to put his hands on the wall and to spread his legs, whereupon the officer then patted down his entire body, searching for weapons. Of course, because Minister Bodie was not armed, the officers found no weapons.

20. Then, Mr. Williams was instructed to "get up" and was put through the same routine, but much more aggressively, apparently because the officers expected to find a weapons. Again, none were found because Mr. Williams was not armed.

21. These humiliating and terrifying searches, at gunpoint, were conducted in front of the other patrons.

22. The Lakeland Police Department officers soon realized that Mr. Williams and Minister Bodie were not armed with pistols, had no intention of committing armed robbery, and were just two tired guys trying to have a little breakfast.

23. No other patron was searched.

24. The Lakeland Police Department officers then explained to the Waffle House management that Mr. Williams and Minister Bodie were not armed, and were not preparing to commit armed robbery.

25. Nevertheless, the Waffle House management demanded that Mr. Williams and Minister Bodie be thrown out of the restaurant.

26. The Lakeland Police Department officers told Mr. Williams and Minister Bodie that The Waffle House management wanted them to leave.

27. Despite the fact that Waffle House managers and employees had incorrectly accused them of preparing to commit armed robbery, defamed them by claiming they were armed with pistols, and as a result nearly caused them to be killed, the Waffle House management was not only unapologetic, but now was refusing to serve them and ordering them to leave or face

trespass charges.

28.   Defendant did not demand the removal of any white patrons and Defendant allowed other white customers to remain inside the restaurant and benefit from the full and equal enjoyment of The Waffle House's services.

29.   Mr. Williams and Minister Bodie requested that they be given the names of the Waffle House employees who had falsely accused them and the name of the manager who demanded that they be thrown out, but when the Lakeland Police Department officer asked for this information, the Waffle House manager refused to provide the information and reiterated the demand that Mr. Williams and Minister Bodie be immediately removed from the premises. Mr. Williams and Minister Bodie complied.

## COUNT I
## VIOLATION OF 42 U.S.C. §§ 1981 AND 1982

30.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 29.

31.   This claim is brought pursuant to 42 U.S.C. §§ 1981 and 1982.

32.   By the actions of its agents and employees, who were authorized to commit the actions committed, Defendant violated 42 U.S.C. §§1981 and 1982. Defendant's discrimination denied Plaintiffs the rights guaranteed under 42 U.S.C. § 1981.

33.   Defendant's acts against Mr. Williams and Minister Bodie were done with malice and reckless indifference to their protected rights.

34.   As a result of Defendant's actions, Mr. Williams and Minister Bodie suffered mental anguish, medical expenses, loss of capacity for the enjoyment of life, loss of earnings,

loss of ability to earn money, and other monetary damages. The losses and expenses are permanent and continuing and they will suffer the losses in the future.

WHEREFORE, Plaintiffs demand judgment for damages, punitive damages, interest, costs, attorneys' fees, and for all other relief, legal and equitable, that this Court deems appropriate, and Plaintiffs further respectfully requests a trial by jury of all issues so triable.

## COUNT II
## SLANDER

35.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 29.

36.     Defendant, through its agents and employees, on two separate occasions -- on the telephone and when law enforcement officers arrived on the scene -- falsely told law enforcement officers that Plaintiffs were armed, appeared suspicious and were preparing to commit armed robbery.

37.     One or more of Defendant's agents or employees, acting within the course and scope of their agency or employment and authority, intended to say and publish to law enforcement officers that Plaintiffs were armed and were about to commit armed robbery and were, therefore, criminals.

38.     Defendant's agent's or employee's or employees' statements were false and tended to degrade and injure Plaintiffs in their good name and reputation.

39.     Defendant's agent's or employee's or employees' statements were knowingly false, deliberately misleading, or rendered with a malicious purpose.

40.     Defendant's agent's or employee's or employees' acts against Mr. Williams and Minister Bodie were done with malice and reckless indifference to their protected rights.

41. As a result of Defendant's agent's or employee's or employees' actions, Mr. Williams and Minister Bodie suffered mental anguish, medical expenses, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and other monetary damages. The losses and expenses are permanent and continuing and they will suffer the losses in the future.

WHEREFORE, Plaintiffs demand judgment for damages, punitive damages, interest, costs, attorneys' fees, and for all other relief, legal and equitable, that this Court deems appropriate, and Plaintiffs further respectfully requests a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED THIS 7th day of November, 2001.

RYAN CHRISTOPHER RODEMS, ESQUIRE
TRIAL COUNSEL
Florida Bar No. 947652
BARKER, RODEMS & COOK, P.A.
300 West Platt Street, Suite 150
Tampa, Florida 33606
Telephone:   813/489-1001
Facsimile:   813/489-1008
Attorney for the Plaintiffs

8